

United States Department of Justice

United States Attorney
Western District of Texas

903 San Jacinto Ave., Suite 334     (512) 916-5858
Austin, Texas 78701     fax (512) 916-5854

October 29, 2024

# APPELLEE'S 28(j) LETTER

Mr. Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, Louisiana 70130-3408

    Re:    *United States v. Contreras*, Nos. 23-50840 & 23-50845

Dear Mr. Cayce:

    In *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), this Court upheld Section 922(g)(1) facially and as applied. This Court focused on what the Supreme Court in *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024), called "the appropriate analysis": "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." Applying Section 922(g)(1) to Diaz "'fit[] neatly'" within the principles represented by two aspects of our tradition "taken together": (1) "serious and permanent punishment" for certain crimes and (2) "[i]mposing permanent disarmament as a punishment" for crime. 116 F.4th at 467-72 (quoting *Rahimi*, 144 S. Ct. at 1901).

    Applying Section 922(g)(1) to Contreras is also consistent with the principles underpinning our regulatory tradition. First, Contreras's prior crime—which involved brandishing a firearm while smoking marijuana (ROA.125)—was at least as serious as the Founding-era theft crimes discussed in *Diaz*, *id.* at 467-68. That his prior crime is not an updated version of a Founding-era crime is irrelevant: A law can "comport with the principles underlying the Second Amendment"

without being a "dead ringer" for or a "historical twin" to past regulations. *Rahimi*, 144 S. Ct. at 1898. And just because Founding-era legislatures did not punish particular conduct—especially conduct reflecting dangers more prevalent today—does not mean they would have called such punishment inconsistent with the Second Amendment. *Id.* at 1905, 1925 (Sotomayor & Barrett, JJ., concurring).

Second, as the "firearm-focused evidence" cited in *Diaz* showed, permanent disarmament is consistent with the "public understanding" around ratification that "the government could prevent people who had committed crimes . . . from accessing weapons." 116 F.4th at 470.

Third, both *Rahimi* and *Diaz* cited "going armed" laws that punished and disarmed "'those who had menaced others with firearms.'" *Id.* at 470-71 (quoting *Rahimi*, 144 S. Ct. at 1900). Disarming Contreras, who was photographed brandishing weapons while using intoxicating drugs (ROA.125) aligns with that aspect of our tradition also. *See United States v. Veasley*, 98 F.4th 906, 916-18 (8th Cir. 2024) (explaining how combining drugs and guns to terrify others matches historical going-armed laws).

    Sincerely,

    Jaime Esparza
    United States Attorney

By:  */s/ Lauren Tanner Bradley*
     Lauren Tanner Bradley
     Assistant United States Attorney


copy (by ECF):  Kimberly S. Keller
                     Attorney for Defendant-Appellant